MARVIN, APPELLANT, *v.* GILES, ADMR., ET AL., APPELLEES.

(No. C-820854—Decided July 27, 1983.)

*Mr. Michael J. Mooney, Mr. John Schrider* and *Cincinnati Legal Aid Society,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Richard H. Lippert,* for appellee Administrator of the Ohio Bureau of Employment Services.

*Messrs. Taft, Stettinius & Hollister* and *Mr. Mark J. Stepaniak,* for appellee Federal Home Loan Bank of Cincinnati.

KEEFE, P.J. Appellant Sammie L. Marvin applied for unemployment benefits on January 13, 1981. Although he was living in Alabama at the time he filed for benefits, his employment had occurred in Ohio so that the matter was processed in Ohio as an interstate claim. The fact that it was such a claim presents no issue before us. His application was consistently disallowed through his numerous administrative appeals, ending on January 6, 1982, with a unanimous decision by the three members of the Ohio Unemployment Compensation Board of Review disallowing any further administrative review. On January 29, 1982, he filed his notice of appeal in the court of common pleas which denied his appeal finding that the ultimate decision of the Ohio Unemployment Compensation Board of Review "was not unlawful, unreasonable or contrary to the manifest weight of the evidence."

The statement of facts as structured by the appellant in his brief is faithful to the evidence in the record. Marvin stopped working for his employer, appellee Federal Home Loan Bank of Cincinnati ("the bank"), on November 28, 1980, after almost seven years of employment with the bank and a total of fourteen years of continuous employment since his graduation from high school. At the bank he was the manager of the check processing area, was making in excess of $25,000 a year, and was scheduled to be promoted to assistant treasurer. On February 25, 1979, while attending the Bibleway Church of God in Christ's Church at 3231 Woodburn Avenue, Cincinnati, Ohio, Marvin, according to his sworn testimony, had a religious experience and was told by God to return to his home in Alabama within two years to help raise his deceased sister's six children. He did resign from the bank, went to Alabama, attempted to secure employment, could not, and applied for unemployment compensation. Throughout the entire administrative proceedings, Marvin's claim was disallowed because it was held that he quit his work without just cause under the Ohio Unemployment Compensation Law.

Although somewhat duplicative of material already contained herein, we nevertheless include the following portions of the official decision of the hearing referee, Kenneth A. Horney, acting for the board of review:

"The claimant filed his initial interstate claim on January 13, 1981 in Montgomery, Alabama. * * *

"Prior to filing the above-mentioned claim, the claimant worked for Federal Home Loan Bank of Cincinnati from February 14, 1974 to November 28, 1980, when he resigned. The claimant had a vision and was instructed by God to relocate to Alabama to help in a family situation. He was to assist his brother-in-law in the raising of six children after the death of the children's mother, the claimant's sister.

"Law applicable: Sections 4141.29(D)(2)(a) and (G), Revised Code of Ohio.

"The claimant may have had a good

personal reason for quitting his employment; becoming totally unemployed; and relocating to another state, but not a reason recognized as 'just cause' under the Ohio Unemployment Compensation Law. * * *"

The administrator's file, a part of the record now before us, contains a letter addressed to the Ohio Bureau of Employment Services on appellant's behalf from the president of the Federal Home Loan Bank of Cincinnati. It states in part:

"Mr. Marvin is a deeply religious man. The depth of his religious conviction is apparent in his stated reason for filing the reconsideration request. Mr. Marvin has stated he left the Bank because he believes his religious obligations have forced him to leave Cincinnati and return to Alabama. I believe Sam is completely sincere in making this statement and that he felt no less an obligation to take this action than would someone who left their [sic] employment because their [sic] position conflicted with their [sic] religious observances."

Although appellant propounds two assignments of error, in essence they contain the identical remonstration: the court of common pleas erred in finding that the decision of the Unemployment Compensation Board of Review was not unlawful, unreasonable or contrary to the manifest weight of the evidence. The same argument is made for both assignments, viz., that appellant quit for religious reasons and the disallowance of unemployment benefits, therefore, is erroneous under both state law and the United States Constitution, specifically religious freedom under the First Amendment.[1]

First, we move to examine any pronouncements by the United States Supreme Court which apply. We fully recognize that the matter sub judice is not the run-of-the-mill unemployment compensation case. We need not highlight or emphasize its unordinary aspects. *Thomas* v. *Review Bd. of the Indiana Employment Security Division* (1981), 450 U.S. 707, concerns a Jehovah's Witness who was initially hired to work in his employer's foundry which fabricated sheet steel for a variety of industrial uses, but when the foundry was closed he was transferred to a department that fabricated turrets for military tanks. He quit, asserting that his religious beliefs prevented him from participating in the production of weapons. The Indiana Employment Security Review Board ("the board") denied Thomas' claim for unemployment compensation, and claimant appealed. The Indiana Court of Appeals ordered the board to extend benefits to claimant Thomas. The Supreme Court of Indiana, dividing three to two, vacated the decision of the court of appeals and denied the claimant benefits. The United States Supreme Court held that Indiana's denial of unemployment compensation benefits to claimant violated his First Amendment right to the free exercise of religion. In *Thomas,* the review board, like the referee (in Indiana), found that Thomas had left his job for religious reasons, and the following language is the United States Supreme Court's reference thereto:

"* * * The referee concluded nonetheless that Thomas' termination was not based upon a 'good cause [arising] in connection with [his] work,' as required by the Indiana unemployment compensation statute. Accordingly, he was held not entitled to benefits. The Review Board adopted the referee's findings and conclu-

---

[1] Appellee administrator notes that appellant did not raise his constitutional argument before the board of review or state it in his notice of appeal to the court of common pleas. However, appellant correctly and timely *did* raise his constitutional argument in his assignments of error filed with the court of common pleas in compliance with R.C. 4141.28 (O).

sions, and affirmed the denial of benefits." (Footnote omitted.) *Id.* at 712.

While the facts in *Thomas* are not identical to those here, nevertheless, the similarity is marked. Thomas quit due to his religious convictions. The only reasonable interpretation which can be made of the hearing referee's findings here is that Sammie L. Marvin quit or "resigned" because he "had a vision and was instructed by God to relocate to Alabama to help in a family situation," a decree which the record demonstrates was given to him while attending a formal service in the church of his choice. If there was a religious conviction in *Thomas,* as the Supreme Court held, a religious conviction is present here on the part of Marvin. The referee in effect recognized that Marvin may have had a good personal reason for quitting his employment, but concluded that a "good personal reason" is not enough for benefits under Ohio law. A "good personal reason" *unassociated with a religious conviction* ordinarily would not be sufficient to justify the allowance of unemployment benefits. However, if there is a true religious conviction present, benefits cannot be withheld even if the religious conviction may also be categorized as a personal conviction. Here, the finding of a "good per-

sonal reason" did not eliminate what amounted to a finding of religious conviction.[2]

In *Thomas,* Chief Justice Burger, writing for the eight justice majority, declared:

"Only beliefs rooted in religion are protected by the Free Exercise Clause, which, by its terms, gives special protection to the exercise of religion. *Sherbert* v. *Verner* [(1963), 374 U.S. 398], *supra; Wisconsin* v. *Yoder,* 406 U.S. 205, 215-216 (1972). The determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task, as the division in the Indiana Supreme Court attests. However, the resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." (Footnote omitted.) *Id.* at 713-714.

"* * * Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion

---

[2] We are not blind to the possibility of charlatans unlawfully faking religious beliefs for their own nefarious purposes. This possibility makes the determination of what is a religious belief or practice "a difficult and delicate task" as the United States Supreme Court recognized in *Thomas. Id.* at 714. The roles of hearing referees and review boards are extremely important in this respect. Findings should report attempted deception or fakery when discerned. There is no suggestion of chicanery in the *Thomas* case, nor here. Contrariwise, the administrative record tends to demonstrate Marvin's religious sincerity. In *Thomas,* the referee categorically reported that the claimant quit due to his religious convictions, and in the matter *sub judice* the

referee in effect came to a similar result, *viz.,* that Marvin resigned because God told him to go to Alabama to assist with the raising of his dead sister's children. In *Thomas,* the opinion states that:

"The narrow function of a reviewing court in this context is to determine whether there was an appropriate finding that petitioner terminated his work because of an honest conviction that such work was forbidden by his religion. * * *" *Id.* at 716.

Claimant-appellant's testimony was taken in Alabama on a cassette tape and sent to Ohio where the hearing referee listened to it and had it transcribed. No appellate argument in any way questions this procedure, and I introduce no noteworthy significance to it.

exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

"* * *

"* * * [I]t is still true that '[t]he essence of all that has been said and written on the subject is that only those interests of the highest order * * * can overbalance legitimate claims to the free exercise of religion.' *Wisconsin* v. *Yoder, supra,* at 215." *Id.* at 717-718.

Appellant Marvin cannot be denied the benefits due him. We sustain both assignments of error, reverse the judgment of the court of common pleas, and enter the judgment which that court should have awarded, *viz.,* that the decision of the Unemployment Compensation Board of Review is unlawful and that the appellant is entitled to such unemployment compensation (for time in covered employment) as is authorized under the laws of Ohio since appellant terminated his employment because of his religious convictions. *Thomas* v. *Review Bd. of the Indiana Employment Security Division, supra.*

*Judgment reversed.*

BLACK, J., concurs.

KLUSMEIER, J., concurs separately.

KLUSMEIER, J., concurring. I concur by separate writing in order to emphasize our adherence to the appropriate scope of review as contained in R.C. 4141.28(O) and to express concern over the burden placed on the triers of fact to determine the bona fide beliefs of applicants for unemployment compensation who assign religious motivation to their acts of terminating employment or refusal to accept employment.

In *Sherbert* v. *Verner* (1963), 374 U.S. 398, the Supreme Court afforded some indication, albeit *obiter dictum,* that there may be some limit to the effective assertion of the Free Exercise Clause of the

First Amendment in unemployment compensation cases. Justice Brennan, writing for the majority, stated, "* * * [n]or do we, by our decision today, declare the existence of a constitutional right to unemployment benefits on the part of all persons whose religious convictions are the cause of their unemployment. * * *" *Sherbert, supra,* at 409-410. The *Thomas* decision was reached in the light of prior decisions of the Supreme Court "particularly *Sherbert* v. *Verner.*" *Thomas* v. *Review Bd. of the Indiana Employment Security Division* (1981), 450 U.S. 707, at 713. In that light the Supreme Court held that "* * * [c]ourts should not undertake to dissect religious beliefs because the believer admits that he is 'struggling' with his position or because his beliefs are not articulated with the clarity and precision that a more sophisticated person might employ." *Thomas, supra,* at 715. Although courts should refrain from such dissection, it is just such critical analysis that is imposed on the administrative agencies below.

Because our narrow function is to determine whether there was an appropriate finding that the appellant terminated his work because of an honest conviction that his religion commanded it, and the facts so found and the conclusions drawn must appear in the record, it follows that the triers of fact must be able to articulate those findings and conclusions notwithstanding the subjective nature of the evidence.

The act of an employee quitting work without just cause disqualifies him from receiving unemployment compensation. R.C. 4141.29(D)(2)(a). "Just cause," as that term is used in this connection, is that circumstance "* * * which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. * * *" *Peyton* v. *Sun T.V.* (1975), 44 Ohio App. 2d 10, 12 [73 O.O. 218]. The presence or absence of just cause is to be determined on the individual facts of each case.

The reason for quitting his employment, as assigned by appellant, being the compulsion of religious obligation, is uncontroverted in the record and therefore the conclusion that he quit without just cause is unlawful and mandates the reversal of the decision of the board of review.