[Cite as *Cyriaque v. Dir., Ohio Dept. of Job & Family Servs.*, 2023-Ohio-4203.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| TAMETRIUS N. CYRIAQUE | : | |
| | : | |
| Appellant | : | C.A. No. 29843 |
| | : | |
| v. | : | Trial Court Case No. 2022 CV 03995 |
| | : | |
| DIRECTOR - OHIO DEPARTMENT OF JOB AND FAMILY SERVICES et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 22, 2023

. . . . . . . . . .

BRIAN J. SMITH and JOHN J. READY, JR., Attorneys for Appellant

ROBIN A. JARVIS, Attorney for Appellee, Ohio Department of Job and Family Services

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Plaintiff-appellant Tametrius N. Cyriaque appeals from a judgment of the Montgomery County Court of Common Pleas upholding the denial of her application for unemployment benefits. For the reasons set forth below, we affirm.

## I. Factual and Procedural Background

{¶ 2} On March 11, 2020, Cyriaque was hired by Community Health Centers of Greater Dayton ("Community Health") as a clinical trainer. Her position required her to have face-to-face contact with other employees.

{¶ 3} In November 2021, Community Health was required, by federal mandate, to ensure that its employees received COVID-19 vaccinations. The mandate required Community Health to maintain records of each employee's vaccination or to maintain an "approved religious or medical exemption on file."

{¶ 4} On December 1, 2021, Cyriaque submitted a form entitled "Request for Religious Exemption from COVID-19 Vaccine Personal Statement Form." The form contained a space for Cyriaque to "provide a personal written and signed statement detailing the religious basis for your vaccination objection, explaining why you are requesting this religious exemption, the religious principles(s) that guide your objections to vaccination, and the religious basis that prohibits the COVID-19 vaccination." Cyriaque's statement, as written, provides:

> I Nicole Cyriaque am seeking the right to request my religious exemption
> from the COVID-19 vaccine. The requirement violates my religious belies
> and practices I sincerely hold as outlined in the conscience outlined in the
> principles of Psalm 91. I am a person of faith and my worship, praise and
> beliefs are sacred and are to be respected in the accordance to federal law,
> US and global human rights in the statutes of God. My health and medical

history has been healed and strengthened through the Holy Spirit. When medical diagnosis hindered my body it was God that removed and placed growths in remission. My journey with God is sacred and my body (temple) is free of all that is processed, preserve and anything that is unpure and unhealthy. The Holy Bible quotes my lifes journey and this duty I take seriously. My decision to abstain from the COVID vaccine is not my 1st vaccine to request exemption from. I know that and acknowledge that I fully understand that this request has to reviewed and processed. I hold my religious beliefs sacred and in the conscience of the divine doctrine of Christ who has healed and guides me. Therefore, my trust is in God.

{¶ 5} As part of her exemption request, Cyriaque presented Community Health with a Religious Organization Statement Form completed by Pastor Mark Zachery of the Solid Faith Ministry.[1] The form, as written, states:

We are requesting a religious exemption from Covid-19 vaccine on behalf of Nicole Cyriaque. As Christian Believers, we hold fast to the confession of our faith concerning this matter. As Christians the decision of whether to vaccinate comes down to the origins of the vaccines themselves. We as Christians believers are morally against and lamenting over the use or beliefs outside of the doctrine of Christ. Creation is just one of the primary reasons we do not vaccinate. As Christian believers we believe that our

---

[1] According to the record, Solid Faith Ministry is a non-denominational church located in Oklahoma which Cyriaque attended when she resided in Oklahoma. There does not appear to be any dispute that Cyriaque remains a member of and continues to be involved with the church via online services and bible study classes.

faith is compatible with science. As believers we are led by our faith in Jesus Christ and Him alone. We are people of faith, and have been Pastoring and mentoring Nicole for years. As believers our faith and our worship, praise, tenets, duties and the likes are sacred, private and are to be respected in accordance to Federal Law, U.S. and global human rights and statues in the Word of God. We pray you will help in this matter.

**{¶ 6}** Cyriaque also submitted another document executed by Zachery which stated:

The First Amendment guarantees religious liberty by ensuring that laws and governmental practices neither promotes religion nor interferes with its free exercise.

Re: FOR RELIGIOUS EXEMPTION/ACCOMODATION RELATED TO COVID-19 VACCINATION

On behalf of Nicole Cyriaque and in compliance with religious liberty protection in Federal law Executive Order No. 13798-4, 82 Fed. Reg 21675 and Religious Freedom Restoration Act of 1993 and title VII of the Civil Rights act of 1964 via EEOC-CVG-2021-3 section 12 this recognized church letter respectfully serves as an official exemption/reasonable accommodation request for said individual seeking exemptions from federal laws, mandates, executive orders and state laws that burden their religious beliefs on the grounds of their sincerely held religious beliefs, tenets of faith, objections and practices which prohibit them from receiving a Covid-19

vaccine.

Please note: the relationship, duties and worship between this person and God are private and not to be questioned, assaulted, trespassed or violated. Please respect this.

{¶ 7} In response, Community Health issued a letter to Cyriaque denying her request for a religious exemption. The letter explained that Community Health had determined that Cyriaque's statements failed to "meet the threshold required to constitute a sincerely held religious belief under the law." The letter further stated that Cyriaque's objections were "generalized in nature" and "merely indicate[d] that the vaccination violates your beliefs and practices without providing details and other guidance as to how and/or why this is purportedly the case." Community Health afforded Cyriaque additional time in which to seek a medical exemption or to get vaccinated. When Cyriaque did neither, her employment was terminated.

{¶ 8} Cyriaque filed an application for unemployment benefits with the Ohio Department of Jobs and Family Services ("ODJFS"). The claim was denied upon a finding that Cyriaque had been discharged with just cause. Cyriaque filed an appeal. In a redetermination decision, ODJFS again disallowed her claim for benefits. Cyriaque appealed to the Unemployment Compensation Review Commission ("the Commission"), and the matter was set for a hearing.

{¶ 9} A telephonic hearing was conducted on August 1, 2022, at which time the following colloquy ensued between Cyriaque and the hearing officer:

Q: And what was the religious reason for, what was the reason for

requesting [an exemption]?

A:   That was against my, um, religion as far as vaccination because of the basis of how it was developed.

Q:   In what regard?

A:   Um, the fetal cells.

Q:   What about the fetal cells, ma'am?

A:   Um, my religion doesn't believe in abortion and as far as the lives of the cells and as far as, um, the ceremony of sacrifice of life and (inaudible) as far as for that type of usage.

Q:   Are you referring to fetal cells being used in initial testing?

A:   Yeah.

Q:   All right.   Um, there were multiple vaccines.   Did you look into whether all of them had fetal cells in testing?

A:   My pastor, they looked through it all and, um * * *

Q:   I'm asking you.   I'm asking if you did, ma'am.

A:   I did also because the information that they received they presented to us as well to make sure we were informed.   And so that was one of the like main reasons as far as for it.   And there were also other reasons that they did, um, teach and talk to us about as far as for it.

Q:   What other reasons?

A:   As far as about life and as far as how life should be preserved and cherished and as far as the usage of life for (inaudible).

Tr. R. 295-296.

{¶ 10} Thereafter, Cyriaque's attorney conducted the following examination:

Q: * * * Um, did you hold a true belief that to take a vaccine that was developed using aborted fetal cells that that was a violation of the tenets of your religion?

A: Yes, I did.

Q: And did you consult with your pastor on that decision?

A: I did. I spoke with my pastor on several, um occurrences about it and got a lot more detailed about it.

Q: Okay. And, as far as your knowledge was that a tenet of your religion?

A: Yes.

Tr. R. 300.

{¶ 11} The hearing officer also admitted a letter written on behalf of Cyriaque by her pastor, Harmony Zachery, dated May 10, 2022. That letter stated in pertinent part:

As believers in Jesus Christ, we requested [Cyriaque's] employer to grant the exemption opportunity. For those members abstaining from the vaccine we submitted a letter of exemption. And the letter was sent not to deny, but to accept. The First Amendment guarantees religious liberty by ensuring that laws and governmental practices neither promote religion nor interfere with its free exercise. We sent a clergy letter out asking for this personal conviction, religious letter for their records to ensure they are not breaking the law. And to deny our letter a religious exemption, it was

against the law. [Cyriaque] is a member of the church body of Jesus Christ, who had the right to exercise her right to receive a religious exemption for the vaccination. First and foremost, the vaccines we oppose include the current vaccine, mRNA vaccines. And the Jensen vaccine, which are produced with aborted fetus cell lines. The Johnson and Johnson vaccine, the Jensen vaccine uses retinal cells from the fetus that was aborted in 1985. And has been treated it in the lab sense. The Pfizer and Moderna vaccine test the mRNA as fetal cell lines from the aborted fetus cell from 1973. Therefore, as faithful Christians and apart of the faithful Church, we cannot, according to the church tenants and our conscious which are outlined below, cannot use any product that takes the origin in abortion. "For you created my inmost being you knit me together in my mother's womb...Psalms 139:13. The inmost being is sacrosanct.

Defiling of the body, many Christians, including Solid Faith Ministry and all its members, believe as 2 Corinthians 7 teachers, that we should "cleanse ourselves from every impurity of flesh and spirit. "The way we practice our religion includes aligning ourselves with scriptures on issues that oppose the wisdom of the world. What the world considers a type of remedy, a privilege, and something to covet in 2021, but is something we consider as Impurity. We do not believe that using fetal cells from an aborted fetus for the benefit of the greater good for our personal benefit can be reconciled. We will not knowingly participate in the process to which

such a product that violates the right to life and dishonors the lives of the unborn.

The Scriptures are very specific about how those who practice Christianity should navigate life. Ephesians 6:10 - 18 directs us to "put on the armor of God," so that we can be equipped with truth, righteousness, peace and faith.

According to the Section 564 of the Federal Food, Drug, and Cosmetic Act, a lawful application of the terms of the lawful emergency use authorization ("EUA") Pursuant includes the right of informed consent and the option to refuse. The FDA's guidance on the right to informed consent and the option to refuse is highlights the right of informed consent and the option to refuse governing the administration of Emergency authorization "unapproved products."

Therefore, as faithful Christians, we oppose any and all abortions. We cannot according to the church tenants on conscience, which we believe teach and practice and live by, and by the teaching from our leaders by the scriptures of the Holy Bible, by Solid Faith Ministry, believe we believe we have outlined the use of any that takes the origin in abortion. We have the right. And is what we teach to an objection of conscience regarding what we put in our bodies. Our right to choose and we choose the teachings of Jesus Christ.

In that the use of these vaccines, which would be both a violation our

faith that opposes abortion on the duty to adhere to moral conscience therefore, under the teachings we follow, and we teach to follow, we are religiously and morally bound.

These are the tenants of our faith. And what we teach at Solid Faith Ministry. We do not align ourselves with any products that come or stems from aborted fetuses. It is against everything that we believe according to our faith and our tenants. By and four the Lord Jesus Christ.

**{¶ 12}** Following the hearing, the hearing officer concluded that Cyriaque was not entitled to unemployment benefits. The decision, in pertinent part, stated:

REASONING

The claimant was discharged by Community Health Centers of Greater Dayton due to her failure to receive a COVID-19 vaccination as required by federal mandate. While she requested an exemption based upon her religious beliefs, the evidence and testimony presented does not establish that her request was based upon a sincerely-held religious belief. The claimant's failure to obtain the required vaccine constitutes fault that will serve to suspend her unemployment compensation benefit rights. The claimant was discharged by Community Health Centers of Greater Dayton with just cause in connection with work. As her separation was disqualifying, her Application for Determination of Benefit Rights is disallowed.

**{¶ 13}** Cyriaque filed an administrative appeal with the Montgomery County Court

of Common Pleas, which affirmed the decision of the Commission. Cyriaque appeals from that judgment.

## II.     Analysis

{¶ 14} The sole assignment of error asserted by Cyriaque states:

THE DECISION DENYING MS. CYRIAQUE UNEMPLOYMENT COMPENSATION IS UNLAWFUL, UNREASONABLE, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15} Cyriaque contends that the Commission erred in its decision denying her claim for unemployment benefits. Specifically, Cyriaque raises the following three arguments: (1) the Commission's decision was unlawful, unreasonable, and against the manifest weight of the evidence; (2) the decision violated her rights under the Free Exercise Clause of the First Amendment of the United States Constitution; and (3) the hearing officer denied her right to a fair hearing.

{¶ 16} We begin with the argument that the Commission's decision was unlawful, unreasonable, and against the weight of the evidence. R.C. 4141.29(D)(2)(a) provides that an individual may not obtain unemployment benefits if he or she "has been discharged for just cause in connection with the individual's work." In Ohio, "just cause" has been defined as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. State Unemp. Comp. Bd. of Review*, 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985), quoting *Peyton v. Sun T.V. & Appliances*, 44 Ohio App.2d 10, 12, 335 N.E.2d 751 (10th Dist.1975). The claimant has the burden of

proving an "entitlement to unemployment compensation benefits." (Citations omitted.) *Id.* A determination of whether just cause exists must be "consistent with the legislative purpose underlying the Unemployment Compensation Act," which was enacted to provide financial assistance to individuals who are involuntarily unemployed through no fault or agreement of their own. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697, 653 N.E.2d 1207 (1995). "The determination of whether just cause exists depends on the "unique factual considerations" of a particular case and is, therefore, primarily an issue for the [hearing officer as the] trier of fact." *Shephard v. Ohio Dept. of Job & Family Servs.*, 166 Ohio App.3d 747, 2006-Ohio-2313, 853 N.E.2d 335, ¶ 19 (8th Dist.), quoting *Irvine* at ¶ 17; *Pennessi v. Hanger Prosthetics and Orthotics, Inc.*, 2d Dist. Montgomery No. 28022, 2018-Ohio-4631, ¶ 68.

{¶ 17} In unemployment compensation appeals, a reviewing court may reverse a just cause determination only "if [it is] unlawful, unreasonable, or against the manifest weight of the evidence." *Tzangas* at 696, citing *Irvine* at 17-18. "[W]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record." *Id.*, citing *Irvine* at 18. This standard applies to all reviewing courts, including the common pleas court and appellate courts. *Id.* Thus, our focus is on the Commission's decision, not that of the common pleas court. *Goodrich v. Ohio Unemp. Comp. Rev. Comm.*, 10th Dist. No. 11AP–473, 2012–Ohio–467, ¶ 5; accord *Haynes v. Ohio Turnpike Comm.*, 8th Dist. Cuyahoga No. 92981, 2010-Ohio-665, ¶ 7. "In conducting our review, we bear in mind that the unemployment compensation statutes

should be construed liberally in favor of the applicant." *Johnson v. SK Tech, Inc.*, 2d Dist. Montgomery No. 23522, 2010-Ohio-3449, ¶ 19, citing *Clark Cty. Bd. of Mental Retardation & Developmental Disabilities v. Griffin*, 2d Dist. Clark No. 2006-CA-32, 2007-Ohio-1674, ¶ 10. Under this standard of review, "a reviewing court must affirm the commission finding if some competent, credible evidence in the record supports it." *Williams v. Ohio Dept. of Job and Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, 951 N.E.2d 1031, ¶ 20. *See also Shepherd v. Ohio Dept. of Job and Family Servs.*, 2d Dist. Greene No. 2021-CA-11, 2021-Ohio-3696, ¶ 12.

{¶ 18} Cyriaque claims the record does not support a finding that her employment was terminated for just cause. In support, she argues she was entitled to forego receiving the vaccine because she had presented a valid, unrebutted claim for a religious exemption. She thus contends that the denial of unemployment benefits violated her rights under the Free Exercise Clause.

{¶ 19} Beliefs grounded in religion are protected by the Free Exercise Clause to the United States Constitution, which grants special protection to the exercise of religion. Because of this protection, unemployment benefits cannot be denied from a terminated employee when the termination – whether initiated by the employer or the employee – is the result of the employee's sincere religious beliefs that prevent her from complying with a condition of employment. In such a circumstance, the termination violates the Free Exercise Clause and is without just cause. *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 708, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *accord Marvin v. Giles*, 11 Ohio App.3d 57, 60, 463 N.E.2d 80 (1st Dist.1983).

{¶ 20} "The determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task * * *." *Thomas* at 714. To demonstrate the existence of a sincerely held religious belief that prevents him or her from complying with an employer's policy, the employee must demonstrate the " 'possess[ion of] a fixed, definite and immutable conviction[.]' " *SK Tech, Inc.*, 2d Dist. Montgomery No. 23522, 2010-Ohio-3449, at ¶ 56. The question of the sincerity of an individual's religious beliefs is a factual matter. *United States v. Seeger*, 380 U.S. 163, 184-85, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); *United States v. Quaintance*, 608 F.3d 717, 721 (10th Cir. 2010); *State v. Whisner*, 47 Ohio St.2d 181, 199, 351 N.E.2d 750 (1976).

{¶ 21} Cyriaque's exemption request form of December 2021 did not include any reference to the use of cell lines obtained from aborted fetuses in the creation or testing of the Covid-19 vaccines. Likewise, neither of the two November 2021 documents executed by her pastor and submitted to her employer along with her request form set forth any specific reference to the use of fetal cell lines in relation to the vaccines. Indeed, it was not until after her exemption request was denied, and shortly before the telephone hearing, that her pastor wrote the May 2022 letter directly articulating the relationship between the vaccines and fetal cell lines and asserting that this relationship implicated the church's opposition to abortion.

{¶ 22} The hearing officer concluded that the "evidence and testimony" did "not establish that [Cyriaque's exemption] request was based upon a sincerely-held religious belief." Given our restrained standard of review, our task is to determine if this finding was supported by some competent, credible evidence found in the record. We conclude

that the hearing officer's finding was so supported. As such, the trial court's judgment must be affirmed.

{¶ 23} It was, of course, the hearing officer's province to assess the credibility of Cyriaque's assertion that the exemption request was based upon her sincere religious opposition to the COVID-19 vaccines. In coming to this decisive determination, the hearing officer was free to believe all, some, or none of Cyriaque's testimony. As noted, Cyriaque's exemption statement submitted to Community Health did not assert that her religious opposition to the COVID-19 vaccines was based upon the use of aborted fetal cells in the development of the vaccines. In contrast, Cyriaque's hearing testimony and other evidence exclusively focused upon the use of aborted fetal cells being used in the development of the vaccines as the basis for the requested exemption. This contrast between Cyriaque's statement provided to Community Health and her hearing testimony provided support for the hearing officer's finding that Cyriaque's exemption request was not premised upon her sincere religious opposition to the COVID-19 vaccines. Given this, we cannot conclude the commission's decision was unlawful because it violated Cyriaque's rights under the Free Exercise Clause, that the decision was unreasonable, or that the decision was against the manifest weight of the evidence.

{¶ 24} We next address the argument that the Commission hearing officer violated Cyriaque's right to a fair hearing. This argument appears to encompass a claim that the hearing officer erred by declining to hear testimony from Cyriaque's pastor and that the hearing officer improperly ruled against Cyriaque despite the fact that she presented unrebutted evidence of her sincerely held religious belief.

**{¶ 25}** We turn first to the claim that the hearing officer improperly failed to hear testimony from the pastor. The hearing officer expressly noted that the pastor's May 10, 2022, letter, discussed above, was part of the record before him for consideration. The hearing officer then asked Cyriaque's attorney whether he would have more specific questions for the pastor outside of the statements set forth in the letter. When the attorney answered in the negative, the hearing officer indicated he would not call the pastor as a witness. The hearing officer then informed Cyriaque's attorney that he could enter an objection on the record to the decision not to call the pastor. The attorney did not object.

**{¶ 26}** Since Cyriaque's attorney failed to voice any objection to the hearing officer's decision not to call the pastor as a witness, any error has been waived on appeal. And we cannot conclude that the exclusion of the pastor's testimony constituted plain error, because the record demonstrates the hearing officer was aware of the content of the May 2022 letter and, importantly, because Cyriaque does not claim the pastor's testimony would have added any information not contained within the letter.

**{¶ 27}** Further, despite the fact that the employer did not present any evidence to rebut Cyriaque's claims regarding her religious beliefs, the hearing officer was not required to find that she held a sincere religious belief regarding the COVID-19 vaccines. In other words, merely reciting a claim of a religious belief does not establish the sincerity of that belief. As stated above, the hearing officer had a basis upon which he could have concluded that Cyriaque did not hold a sincere religious objection to the COVID-19 vaccination.

**{¶ 28}** We conclude that the record supports the determination of the hearing officer. We further conclude the record does not support the claim that Cyriaque was denied a fair hearing or that her rights under the Free Exercise Clause were violated. Accordingly, the sole assignment of error is overruled.

### III. Conclusion

**{¶ 29}** The judgment of the Common Pleas Court affirming the decision of the Review Commission is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.